IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:26-cr-00213-BL-SMD |
| | ) | |
| QUINCY MAURICE JONES | ) | |
| | ) | |

**ORDER**

Defendant Quincy Maurice Jones faces an indictment charging him with transportation of a minor between Alabama and Georgia with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). (Doc. 6). Law enforcement identified the Defendant using the Flock LPR camera database. The Defendant has filed a motion to suppress, (doc. 24), in which he seeks suppression of "all evidence derived from an automated license plate reader (LPR) database query conducted by law enforcement on April 1, 2026, and to suppress any subsequent evidence obtained as a fruit of the poisonous tree." (Doc. 24 at 1).

This case is before the court on the recommendation of the United States Magistrate Judge that the Defendant's motion to suppress be denied. (Doc. 41). The Defendant filed objections to the recommendation. (Doc. 42).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(10(C). A district judge must "make a *de novo* determination of those portions of the

[magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court must "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" and "give *fresh consideration* to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (emphasis in *Raddatz*) (internal quotations and citations omitted).

In his objections, the Defendant argues that the Magistrate Judge's reliance on *United States v. Knotts*, 460 U.S. 276 (1983), as controlling is flawed because the Supreme Court in *Knotts* "expressly reserved whether different constitutional principles would apply to later dragnet surveillance practices." (Doc. 42 at 6). True, the Court in *Knotts* did not address the exact issue of Flock cameras like in this case. In fact, neither the United States Supreme Court nor the Eleventh Cicuit have

decided the precise issue raised in this case.[1] However, despite the Supreme Court's reservation in *Knotts*, the court agrees with the Magistrate Judge that *Knotts* stands for the proposition that a "person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another" and that "a person travelling on public streets voluntarily conveys to anyone

---

[1] This precise issue is on appeal to the Eleventh Circuit in two cases: *United States v. Jalal*, No. 25-13519 and *United States v. Slaybaugh*, No. 25-14394. The Eleventh Circuit heard oral argument in *Slaybaugh* in July 2026, but the Court has not rendered a decision in either case.

Interestingly, the Eleventh Circuit addressed a license plate reader issue in *dicta* prior to *Carpenter* and *Chatrie*. In *United States v. Wilcox*, 415 F. App'x 990 (11th Cir. 2011), although the Eleventh Circuit ultimately found that Wilcox waived his right to challenge a Magistrate Judge's recommendation to dismiss the motion to suppress because he failed to timely file written objections, the Court in *dicta* explained that it would have affirmed the district court's denial of the motion to suppress. In *Wilcox*, officers were on patrol in a marked police car equipped with tag reader technology; the "tag reader took pictures of nearby cars and sent them to a computer" that "matched the pictures against a database, downloaded daily from the Federal Bureau of Investigation, that included information on stolen cars, outstanding warrants, expired registrations and uninsured vehicles." *Wilcox*, 415 F. App'x at 991. The tag reader sounded an alert for a car driven by *Wilcox*, which led to a stop of his car and arrest for possession of a gun by a convicted felon. Wilcox, 415 F. App'x. at 991. The Eleventh Circuit explained:

> The Supreme Court has concluded in similar contexts that visual surveillance of vehicles in plain view does not constitute an unreasonable search for Fourth Amendment purposes. This is true even if the surveillance is aided by the use of technology to augment the officers' sensory faculties.
>
> Georgia law requires license plates to be displayed at all times on the rear of the vehicle so that it is plainly visible. Given the Supreme Court's Fourth Amendment precedent, the district court did not commit plain error in concluding that [the defendant] did not have a reasonable expectation of privacy in the plainly visible license plate and that the officers' use of the tag reader in this case did not violate the Fourth Amendment.

*Wilcox*, 415 F. App'x at 992 (internal citations omitted).

who wants to look 'the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.'" (Doc. 41 at 4-5 (quoting *Knotts*, 460 U.S. at 281-82)). Moreover, the district court opinions cited by the Magistrate Judge holding that law enforcement's use of ALPR databases such as Flock's does not implicate the Fourth Amendment also rely on this proposition in *Knotts*. (Doc. 41 at 5, fn 1); see *United States v. Martin*, 753 F. Supp. 3d 454, 474 (E.D. Va. Oct. 11, 2024); *United States v. Brown*, 2025 WL 2444596, at *4 (W.D. Okl. Aug. 25, 2025); *United States v. Acosta*, 2025 WL 2427700, at *5 (N.D. Okl. Aug. 22, 2025); *United States v. Jackson*, 2025 WL 1530574, at *6 (D. Kan. May 29, 2025); *United States v. Cooper*, 2025 WL 35035, at *6 (E.D. La. Jan. 6, 2025); *United States v. Porter*, 2022 WL 124563, at *3 (N.D. Ill. Jan. 13, 2022). The Magistrate Judge's reliance on *Knotts* for this proposition was not error.

At the time of the Magistrate Judge's recommendation, the Defendant had not pointed to any decision holding that the use of ALPR databases such as Flock's constituted a warrantless search in violation of the Fourth Amendment. (Doc. 41 at 5). In his objections, the Defendant cites to *United States v. Kyle*, a Northern District of Oklahoma case decided after the Magistrate Judge's recommendation that held that "the officer's use of ALPR systems was an unconstitutional warrantless search." (Doc. 42 at 7); *see United States v. Kyle*, No. 26-CR-00189-SEH, 2026 WL

2958728, at *1 (N.D. Okla. Oct. 1, 2026). From what the court can find, *Kyle* is the only case with this holding. The court does not find the reasoning in *Kyle* persuasive. The court in *Kyle* viewed the use of ALPR cameras as a form of "indiscriminate mass surveillance" that "is not targeted on a single individual." *Kyle*, 2026 WL 2958728, at *13. However, the court in *Kyle* did not explain how that view implicated an individual's personal Fourth Amendment right. Moreover, the court in *Kyle* speculated about the future of ALPR cameras turning into "a fleet of drones hovering over an entire city so that they don't miss the movement of a single vehicle." *Kyle*, 2026 WL 2958728, at *13. But this court "must rule on the facts as they are and may not speculate about what the future may hold for Flock's capabilities." *Martin*, 753 F. Supp. 3d at 476. The court finds more persuasive the district court cases cited in the Magistrate Judge's recommendation that all go against *Kyle*.

The Defendant also objects to the Magistrate Judge's distinguishment of *Carpenter v. United States*, 585 U.S. 296 (2018), and *Chatrie v. United States*, 146 S. Ct. 2193 (2026), "as confined to nearly perfect cellphone surveillance." (Doc. 42 at 6). He argues that the Magistrate Judge's distinguishment

> identifies a factual difference, but it does not explain why retrospective ALPR records must receive no protection even when aggregated over a month. *Carpenter's* explanation and concern of retrospective tracking and *Chatrie's* reliance on it require an assessment of the records and investigative method, including their temporal reach and capacity to

> reconstruct movements. Indeed, the key reasoning in *Chatrie* was that "location history allows police to reconstruct retrospectively, and with no real effort, people's comings and goings in any area," enabling "tireless and absolute surveillance of any number of people in any number of places." *Id.* The same is true here with this technology. The fact that those cases involve cellphones is immaterial—the Supreme Court's reasoning is directly applicable to this case and the use of FLOCK cameras.

(Doc. 42 at 6-7). The Defendant objects specifically to the Magistrate Judge's "finding that the investigator did not track Jones' vehicle for an extended period or obtain detailed movement information." (Doc. 42 at 3). He argues that this finding "cannot be reconciled with the 30-day query that was done specifically to track all of Jones' past locations." (Doc. 42 at 3). The Defendant also objects that the Magistrate Judge's recommendation "fails to account adequately for the geographic breadth of the accessible Flock network and the scope of the historical vehicle-location information examined." (Doc. 42 at 4-5).

Even considering the investigator's entire testimony at the hearing regarding the geographic breadth of the accessible Flock network, the court agrees with the Magistrate Judge's findings and conclusions in this case. The court agrees with the Magistrate Judge that the "kind of surveillance that concerned the [Supreme] Court in *Carpenter* and *Chatrie* is not at issue here." (Doc. 41 at 6). The Flock camera system provides episodic snapshots of a person's whereabouts on a public road with gaps of time between cameras. The Flock system simply "provide[s] a snapshot of

the suspect's location at a discrete time while travelling in an automobile on a public road" and is "not like the 24-hour surveillance cautioned against in *Carpenter* and *Knotts*." *United States v. Toombs*, 671 F. Supp. 3d 1329, 1334 (N.D. Ala. 2023). "A person must actively pass by one of the cameras for any data to be collected by the ALPR system, and even then, only a small amount of information is collected and retained." *Cooper*, 2025 WL 35035, at *6.

Individual snapshots in certain locations on public roads at specific times stored for no more than 30 days "hardly rise to the level of persistent, unceasing public surveillance that the [Supreme Court] found troublesome in *Carpenter*." *Martin*, 2024 WL 4476560, at *13. The Flock camera system does not track the whole of a person's movements or reveal intimate details of individuals' lives like the cell phone data in *Carpenter* and *Chatrie*. Further, the Court in *Carpenter* distinguished cell phones from cars, noting that "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time." *Carpenter*, 585 U.S. at 311. The Flock system data is limited to when a vehicle passed a certain Flock camera on a public road and only reveals the outward appearance of the rear of the vehicle. A defendant does not have a reasonable expectation of privacy in either.

Here, retrospectively looking back at most 30 days in the recorded license plate data at snapshots of the Defendant's location on a public road is "much

different from [looking at] the 12,898 location points from [cell phone] records spanning 127 days that the Government obtained in *Carpenter.*" *Toombs*, 671 F. Supp. 3d at 1333–34. The court agrees with the Magistrate Judge that "under current Supreme Court guidance, Investigator Joiner's use of the Flock camera system to identify Jones's mandatorily-displayed license plate on a public road at a single camera location within a two-hour window and his retrospective check on Jones's specific vehicle [in that area for the previous 30 days] did not violate the Fourth Amendment." (Doc. 41 at 7).

After careful review of the entire file, including the transcript of the motion to suppress hearing and all hearing exhibits and all of the Defendant's objections, and upon consideration of the recommendation of the Magistrate Judge, the court **OVERRULES** the Defendant's objections (doc. 42), **ADOPTS** the recommendation of the Magistrate Judge (doc. 41), and **DENIES** the Defendant's motion to suppress (doc. 24)**.**

The Court DIRECTS the Clerk of Court to term the gavels at documents 24 and 41.

**DONE** and **ORDERED** on this the 19th day of November, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE